| | |
|---|---|
| LEILA NASSER ASR,<br>Individually and as parent of minor<br>Child DM,<br><br>             Plaintiff,<br>vs.<br><br>DANIEL R. HANSEN, et al.,<br><br>             Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    **ORDER**<br>)<br>)<br>) |

**THIS MATTER** comes before the Court on a Motion to Dismiss by Defendant Daniel R. Hansen, (Doc. No. 9), and on a Motion to Dismiss by Defendants Kindercare Education, LLC and Kindercare Learning Centers, LLC, (Doc. No. 10).

**I.    BACKGROUND**

Pro se Plaintiff Leila Nasser Asr, individually as the parent of minor child DM, commenced this action on March 6, 2020, naming as Defendants Daniel R. Hansen, Kindercare Education, LLC, and Kindercare Learning Centers, LLC. This action arises from a dispute over a personal injury settlement involving Plaintiff Asr's minor child in a prior lawsuit in North Carolina state court. Mogharrebi vs. KinderCare Educ., LLC, Civil Action 17-CVS-11996.

The previous North Carolina lawsuit, filed on June 28, 2017, was captioned Darab Mogharrebi, a Minor, by and through his Guardian ad Litem, Shahriar Mogharrebi and Shahriar Mogharrebi and Leila Nasser-Asr v. Kimberly Franklin, [and the KinderCare Defendants], 17-CVS-11996 (the "First Lawsuit"). The First Lawsuit was litigated for approximately two years, ending when the KinderCare defendants served an Offer of Judgment for $3,050,000, which the

1

plaintiffs in that lawsuit accepted (the "Acceptance") on May 8, 2019.  The Acceptance was filed June 6, 2019.

Under North Carolina law, acceptance of the Offer of Judgment had to be approved by a Superior Court Judge as it involved claims of a minor, as well as the minor's parents. Accordingly, on June 19, 2019, after an extensive hearing in which Plaintiff Nasser-Asr and her husband Shahriar Mogharrebi acknowledged their approval of the settlement and acceptance of the Offer of Judgment, the Honorable Karen Eady-Williams entered an Order Approving Settlement and Acceptance of Offer of Judgment for Minor Child (the "Order of Approval"). The Order of Approval disposed of all claims in the First Lawsuit.  Complying with the Order of Approval, the KinderCare Defendants satisfied the Judgment, as shown by the July 29, 2019, Satisfaction of Judgment (the "Satisfaction of Judgment").

Plaintiff Nasser-Asr now initiates this litigation on behalf of herself and her minor child, despite accepting the Offer of Judgment and the KinderCare Defendants' satisfaction thereof. Although Plaintiff's specific legal claims are not clear, significantly she claims that she is not satisfied with the $3,050,000 judgment and that the Offer of Judgment was not in her child's best interest.

Defendants filed the pending motions to dismiss on April 17, 2020.  On April 20, 2020, the Court ordered Plaintiff to respond, advising Plaintiff that "failure to respond may result in Defendants being granted the relief that they seek."  (Doc. No. 11).  Despite seeking and obtaining extensions of time, Plaintiff has not responded to the motions to dismiss, and the time to do so has passed.  Thus, the matter is ripe for disposition.

## II. FACTS UNDERLYING THE FIRST LAWSUIT

According to the First Lawsuit Complaint, DM attended day care at KinderCare's Park

2

Case 3:20-cv-00141-MOC-DCK   Document 22   Filed 11/23/20   Page 2 of 14

Road facility in Charlotte, North Carolina. (Def. Ex. A at ¶ 14). The First Lawsuit Complaint alleges that on July 14, 2014, when DM was three years old, a teacher at the Park Road facility grabbed DM, dragged him, and threw him against a wall, where his head hit a shelf. (Id. at ¶¶ 18 & 22). According to the Complaint, DM suffered a traumatic brain injury from being thrown. (Id. at ¶ 19). The plaintiffs in the First Lawsuit were DM's mother Nasser-Asr, DM's father Shahriar Mogharrebi, and Shahriar Mogharrebi, as guardian ad litem for DM. They hired Chuck Monnett as their legal counsel.

The KinderCare Defendants hired the law firm Shumaker, Loop & Kendrick, LLP, who made their appearance on August 4, 2017. Defendant Hansen was one of the Shumaker attorneys who worked on the case. As noted earlier, the KinderCare Defendants submitted a $3,050,000 Offer of Judgment. But at the same time, the KinderCare Defendants also indicated through the mediator, Ray Owens, that they would pay $3,500,000 ($450,000 more) if the First Lawsuit plaintiffs would sign a confidentiality agreement. (Def. Ex. F, pp. 5–6). The plaintiffs in the First Lawsuit chose the lesser amount so that they would not be bound by a confidentiality agreement. Consequently, the plaintiffs in the First Lawsuit served written notice of the Acceptance of Offer of Judgment. Hearings took place June 6 and 12, 2019, to determine whether to approve the Acceptance of Offer of Judgment. At both hearings, the plaintiffs were represented by two separate attorneys: Mr. Monnett, and an attorney from the Kincaid & Associates law firm. See (Def. Ex. F, pp. 2, 5–6).

At the June 12 hearing, a court-certified interpreter who spoke the plaintiffs' native language was also present in case there might be trouble communicating. (Def. Ex. G, p. 15). The First Lawsuit plaintiffs rarely asked for the interpreter's help, preferring to address the court in English. Many of the fraud, discrimination, and collusion claims in this lawsuit arose from the

3

two June hearings in the First Lawsuit. Since it had been stated at both hearings that the First Lawsuit plaintiffs had some "divergence of opinions about how the case should be handled" with Mr. Monnett, the trial court was careful to ensure that Nasser-Asr and Mogharrebi both understood what was going on and that they voluntarily consented to the Acceptance and the Order Approving Minor Settlement. The following exchanges were typical:

> **THE COURT**: So you feel like you've [sic] being forced to take the settlement? Your attorney, Mr. Monnett, told you you had no choice? Is that what you're saying?
> **MS. NASSER-ASR**: No. He said this is the best thing I can get out of it.
> **MR. MOGHARREBI**: Option. Yeah, yeah. Best option we have. Yeah.
> **MS. NASSER-ASR**: And I accept it because I have lots of friend [sic] here.

(Def. Ex. G, p. 31).

> **THE COURT**: But with where you stand now, are you satisfied with this outcome for your child?
> **MS. NASSER-ASR**: Yeah. I have—I'm out of choice. And as you say, it's a possibility I'm going to get this [a poor result at trial], so I accept it, yes.

(Id., p. 32).

> **THE COURT**: So are you not satisfied with this outcome?
> **MR. MOGHARREBI**: Which one?
> **THE COURT**: The settlement that's in the best interest of the child?
> **MR. MOGHARREBI**: I'm not talking about the settlement, Your Honor. Stop. I'm not talking about settlement. I'm talking about the way Mr. Monnett handled to invest in the settlement. We want—
> **THE COURT**: But you do agree that all would reach a resolution that's in the best interest of your child.
> **MR. MOGHARREBI**: Yes.
> **THE COURT**: You agree with that, right?
> **MR. MOGHARREBI**: Yes. I accept offer of judgment. Yes. Because Mr. Monnett said that's the best thing you are going to have. Yes, we accept that. Yes. Yeah. We accept that.
> **THE COURT**: And like I told your wife or explained to your wife, you do agree that going to trial is a risk? You understand that?
> **MR. MOGHARREBI**: Yes. Yes. We accept that after Mr. Monnett talk to us. Yes. And we saw some shortfall from the Mr. Monnett office, so for that he is—we accept that.

(Id. at pp. 42–43).

4

During the hearing, the main point of contention was not whether to accept KinderCare's Offer of Judgment and enter the Order Approving Settlement. Rather, it was how the settlement money would be invested and where it would go once KinderCare paid it. Further, at the June 12 hearing, the parties went over the language in the Order Approving Settlement. During that discussion, it was clear that the Offer of Judgment was not just to end the minor's claims in exchange for the $3,050,000, it was also to end the parents' individual claims:

> **MR. MECKLER**: … And that would be my only change to this order [approving minor's settlement]—is that paragraph H talks about the individual claims of the parents. It would just need to say dismissed with prejudice.
> **THE COURT**: H or 8?
> **MR. MECKLER**: H, page 6. Because the offer of judgment is to all the parties. …
> **MR. HANSEN**: Add with prejudice.
> **THE COURT**: With prejudice.
> **MR. MECKLER**: I think that was the intent. It's just not included.
> **THE COURT**: And it needs to be added with prejudice.
> **MR. MECKLER**: Yes.
> **THE COURT**: Okay. I'm fine with the outcome. I want to go ahead and move forward with the offer of judgment being approved, which is essentially an order approving this settlement for the minor child at $3,050,000.

(Def. Ex. G, pp. 49–50).

To comply with the court's Order, the KinderCare Defendants paid the $3,050,000, and Mr. Monnett filed the Satisfaction of Judgment. (Def. Ex. E). Eight months later, Plaintiff Nasser-Asr filed this action, in which she purports to bring claims, on behalf of her minor child, against Defendants for "conspiracy, fraud, violating human right by racial discrimination and harassment, and violating the human right of having a fair trial," and for "conspiracy, falsifying and violating human right by racial discrimination and harassment." Plaintiff alleges that on July 14, 2014, on two separate occasions, "defendant attempted to murder a three-year-old child because the child's parents were originally from the Middle East. Defendant committed this crime while the child was under their care." (Doc. No. 1 at 6). Plaintiff alleges that Defendants

5

"joined together fraudulently and conspiratorially to systematically bully, harass, and discriminate [against] plaintiff in the wors[t] inhuman[e] and cruel ways": Defendants "prevent[ed] [Plaintiff] from learning the truth every step of the case" and intimated and interrogated "Plaintiff many times during the discovery and mediation about her origin country Iran"; Defendants "collaborated in conspiracy with plaintiff's litigation attorney to violate plaintiff's right for having a fair trial"; and Defendants "intentionally collaborated in conspiracy with the judge and plaintiff's litigation attorney to make false statements/documents in order to prevent the justice, suppress his criminal action, eliminate plaintiff from the order approving the settlement, and violate plaintiff's rights because she is from the Middle East." (Doc. No. 1 at 6–7). Plaintiff contends that Defendants collaborated with the judge and Plaintiff's attorney in the First Lawsuit to essentially force Plaintiff to accept a settlement that she did not want. See (Doc. No. 1 at 8). As relief, Plaintiff seeks compensatory, treble, and punitive damages.

### III. STANDARD OF REVIEW

Defendants move to dismiss this action, in part, under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 12(b)(6) provides that a motion may be dismissed for failure to state a claim upon which relief can be granted. A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint without resolving contests of fact or the merits of a claim. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992), cert. denied, 510 U.S. 828 (1993). Thus, the Rule 12(b)(6) inquiry is limited to determining if the allegations constitute "a short and plain statement of the claim showing the pleader is entitled to relief" pursuant to Federal Rule of Civil Procedure 8(a)(2). To survive a defendant's motion to dismiss, factual allegations in the complaint must be sufficient to "raise a right to relief above a speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Thus, a complaint

6

will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

For the purposes of a Rule 12(b)(6) analysis, a claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). The Court must draw all reasonable factual inferences in favor of the plaintiff. Priority Auto Grp., Inc. v. Ford Motor Co., 757 F.3d 137, 139 (4th Cir. 2014). In a Rule 12(b)(6) analysis, the Court must separate facts from legal conclusions, as mere conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678. Importantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. However, well-pleaded factual allegations are entitled to a presumption of truth, and the court should determine whether the allegations plausibly give rise to an entitlement to relief. Id. at 679.

"When considering a motion to dismiss involving pro se parties, the court construes the pleadings liberally to ensure that valid claims do not fail merely for lack of legal specificity." Brown v. Charlotte Rentals LLC, No. 3:15-cv-0043-FDW-DCK, 2015 WL 4557368, at *2 (W.D.N.C. July 28, 2015) (citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978)). At the same time, however, the Court should not "assume the role of advocate for the pro se plaintiff." Gordon, 574 F.2d at 1151 (quotation omitted).

**IV.  DISCUSSION**

**A. Res Judicata As to Plaintiff's Claims Against the KinderCare Defendants and Mr. Hansen.**

In support of the motions to dismiss, Defendants first contend that this action is barred by res judicata. For the following reasons, the Court agrees.

A federal court sitting in diversity generally applies the relevant state substantive law and federal procedural law.  Erie R.R. v. Tompkins, 304 U.S. 64, 58 (1938).  In determining the preclusive effect of a state-court judgment, the federal courts must, as a matter of full faith and credit, apply the forum state's law of res judicata and collateral estoppel.  See Kremer v. Chemical Constr. Corp., 456 U.S. 461, 481–82 (1982); St. Paul Fire & Marine Ins. Co. v. Lack, 476 F.2d 583 (4th Cir. 1973) (applying North Carolina law in a diversity case involving res judicata).

"Under the doctrine of res judicata or 'claim preclusion', a final judgment on the merits in one action precludes a second suit based on the same cause of action between the same parties or their privies."  Whiteacre P'ship v. Biosignia, Inc., 358 N.C. 1, 15 (2004) (citation omitted).  "For res judicata to apply, a party must show that the previous suit resulted in a final judgment on the merits, that the same cause of action is involved, and that both [the party asserting res judicata and the party against whom res judicata is asserted] were either parties or stand in privity with parties."  State ex rel. Tucker v. Frinzi, 344 N.C. 411, 413–14 (1996) (alternation in original).  "The doctrine prevents the relitigation of 'all matters . . . that were or should have been adjudicated in the prior action.'"  Whiteacre P'ship, 358 N.C. at 15 (quoting Thomas M. McInnis & Assocs. v. Hall, 318 N.C. 421, 428 (1986)).

An important res judicata principle is that it "bars every ground of recovery or defense which was actually presented or which could have been presented in the previous action."  Goins v. Cone Mills Corp., 90 N.C. App. 90, 93 (1988).  A final judgment "operates as an estoppel not only as to all matters actually determined or litigated in the prior proceeding, but also as to all relevant and material matters within the scope of the proceeding which the parties, in the exercise of reasonable diligence, could and should have brought forward for determination."

8

Rodgers Builders, Inc. v. McQueen, 76 N.C. App. 16, 22 (1985). In sum, a party may not reopen the subject of litigation that might have been brought forward in the previous proceeding. Id. at 23. With respect to Mr. Hansen, as the defense counsel for the KinderCare Defendants, he is considered their privy. "If a non-party who thus participates in litigation has an interest sufficiently close to the matter in litigation," then both the non-party and opponent are bound by that judgment under the principles of res judicata. Int'l Tel. & Tel. Corp. v. Gen. Tel. & Elecs. Corp., 380 F. Supp. 976, 980 (M.D.N.C. 1974). A non-party who has the legal right, interest, or duty dependent wholly or in part on the cause of action before the court is considered a privy for the purposes of res judicata. Id. Notably, a fiduciary relationship between a party and non-party is a basis for applying res judicata. See Sea-Land Servs., Inc. v. Gaudet, 414 U.S. 573, 593–94(1974). As the KinderCare Defendants' attorney in the First Lawsuit, Mr. Hansen owed KinderCare fiduciary duties. Moreover, he owed legal and ethical duties to KinderCare that arose from his representation. Thus, Mr. Hansen was KinderCare's privy and enjoys the same res judicata protection as KinderCare.

The First Lawsuit was a personal-injury action by a minor child whose parents also brought individual claims arising from the child's injury. Plaintiff's present Complaint alleges collusion, discrimination, and a list of other conclusory bad acts against Mr. Hansen and the KinderCare Defendants that started from the date of the minor child's injury in July 2014, continued to the filing of the First Lawsuit in 2017, and even beyond that for another two years, until Plaintiffs accepted the Offer of Judgment. If those allegations were true, then the causes of action in the current action should have been brought in the First Lawsuit.

Similarly, if the bad acts occurred throughout the two years of litigating the First Lawsuit—as alleged in the current Complaint—then the plaintiffs in the First Lawsuit should

have moved to amend the First Lawsuit complaint and add their current discrimination/collusion claims or otherwise sought relief in the First Lawsuit. Plaintiff Nasser-Asr's failure to bring her current claims in the First Lawsuit bars Plaintiff now from pursuing them in this Court. In sum, Plaintiff Nasser-Asr is not allowed to relitigate the same personal-injury claims that she received a favorable judgment on in the First Lawsuit.

### B. Collateral Estoppel as to all Claims against the KinderCare Defendants.

Under the collateral-estoppel doctrine, or issue preclusion, "a final judgment on the merits prevents relitigation of issues actually litigated and necessary to the outcome of the prior action in a later suit involving a different cause of action between the parties or their privies." State ex rel. Tucker v. Frinzi, 344 N.C. 411, 414 (1996). A party asserting collateral estoppel is required to show that the earlier suit resulted in a final judgment on the merits, that the issue in question was identical to the issue actually litigated and necessary to the judgment, and that both the party asserting collateral estoppel and the party against whom collateral estoppel is asserted were either parties to the earlier suit or were in privity with the parties. Id. The same principles of "privity" explained above also apply to the collateral-estoppel doctrine.

Here, in addition to being barred by res judicata, Plaintiff is barred by collateral-estoppel as to the KinderCare Defendants. First, the Acceptance of the Offer of Judgment by the plaintiffs in the First Lawsuit and its prompt satisfaction constitute a final judgment on the merits. Second, the actual issue litigated in the First Lawsuit was whether the minor child, DM, and his parents were injured as a result of the alleged abuse incident on July 14, 2014. Further, the civil procedure concerning how the First Lawsuit was conducted was obviously "necessary to the judgment," as the judgment's legitimacy would depend in part on whether the First Lawsuit was conducted in accordance with the appropriate civil rules. Thus, there is identity of the actual

10

issue litigated and items necessary to the First Lawsuit judgment that are now being relitigated in this action.

Third, there is an identity of parties or their privies between the First Lawsuit and this one. In the First Lawsuit both the minor child, DM, and Leila Nasser-Asr were plaintiffs. They are plaintiffs again in this lawsuit. In the First Lawsuit, the KinderCare Defendants were defendants, just as they are now in this lawsuit. Accordingly, all collateral estoppel elements are met, and Plaintiff is barred from seeking to relitigate the injury and procedures of the First Lawsuit.

In sum, this action will be dismissed as barred by res judicata and collateral estoppel principles.

### C. Nasser-Asr's Standing to Bring Claims on Behalf of Her Minor Child.

Dismissal is also appropriate because Plaintiff Nasser-Asr does not have standing to bring this action on behalf of her minor child. "It is fundamental to civil practice that minors are not competent to sue or be sued without appointment of a guardian ad litem." Queen v. Minn. Life. Ins. Co., No. 3:09cv383-DCK, 2010 WL 249326, at *1 (W.D.N.C. Jan. 21, 2010). Federal Rule of Civil Procedure 17(c) provides that certain specified representatives "may sue . . . on behalf of a minor" or, if the minor "does not have a duly appointed representative," he or she "may sue by a next friend or guardian ad litem." FED. R. CIV. P. 17(c). "In actions or special proceedings when any of the parties plaintiff are infants or incompetent persons, whether residents or nonresidents of this State . . . they must appear by general or testamentary guardian . . . or if there is no such known guardian, then such persons may appear by guardian ad litem." See N.C. R. CIV. P. 17(b). "It has long been the law of North Carolina that a next friend or guardian ad litem cannot step forward and assume on his own the authority to prosecute the infant plaintiff's suit;

11

rather, his authority is based on appointment by the court." Genesco, Inc. v. Cone Mills Corp., 604 F.2d 281, 285–86 (4th Cir. 1979). "[E]ven the parent or other natural guardian of the infant cannot step forward as a self-appointed guardian ad litem." Id. at 286. "Although a parent may initiate an action in North Carolina on behalf of a minor, the parent can do so only with court approval." J.W. v. Johnson Cty. Bd. of Educ., No. 5:11-CV-707, 2012 WL 4425439, at *6 (E.D.N.C. Sept. 24, 2012). Moreover, the Fourth Circuit has held that a non-attorney parent of a minor child may not represent the interests of that child in litigation. Myers v. Loudoun Cty. Public Sch., 418 F.3d 395, 401 (4th Cir. 2005). Here, since Plaintiff Nasser-Asr does not allege that she is the minor child's guardian ad litem or has otherwise received judicial approval, she does not have standing to bring this case on her son's behalf. Thus, dismissal is alternatively appropriate on this basis.

**D. Plaintiffs' Acceptance of the Offer of Judgment Waived, Released, and Extinguished Plaintiffs' Claims against the Kindercare Defendants.**

Finally, the Court finds that dismissal is also appropriate because the plaintiffs in the Fist Lawsuit accepted the KinderCare Defendants' Offer of Judgment, and the KinderCare Defendants satisfied that judgment. A plaintiff's acceptance of an offer of judgment precludes the plaintiff from later initiating a related action against the same defendant in any court of competent jurisdiction. Kutsmeda v. Informed Escrow, Inc., No. 3:06CV082, 2016 WL 1720696, at *2 (E.D. Va. June 22, 2006). "Many courts have recognized that the acceptance of a Rule 68 offer of judgment effectively operates as a settlement and release of all claims against the defendant." See, e.g., Delta Air Lines, Inc. v. August, 450 U.S. 346, 350, 363 (1981). Further, a plaintiff's acceptance of defendant's Rule 68(a) offer of judgment precludes recovery beyond the amount ordered. Estate of Wells By and Through Morley v. Toms, 129 N.C. App.

12

413, 417 (1998).

Even if the Offer and Acceptance of Judgment in this case does not constitute a settlement and release, the satisfaction of judgment in the prior lawsuit bars and extinguishes any subsequent causes of action. Simpson v. Plyler, 258 N.C. 390, 395–96 (1963). Entry and satisfaction of a judgment pursuant to Rule 68(a) of the North Carolina Rules of Civil Procedure discharges all tortfeasors from liability to the claimant. See Akins v. Mission St. Joseph's Health Sys. Inc., 193 N.C. App. 214, 219–20 (2008) (where an entry of judgment was entered and a defendant filed a satisfaction of judgment, the court held that not only did the satisfaction of judgment extinguish all claims against the primary defendant, the hospital, but also its agent, a doctor). Here, the plaintiffs' acceptance of the Offer of Judgment in the First Lawsuit, their confirmation that the process was fair, and the fact that they accepted the Offer of Judgment and dismissal with prejudice after having an opportunity to be heard in open court together waive and extinguish all claims alleged by Plaintiff Nasser-Asr in the Complaint in this action. For this additional reason, the Court dismisses this action.

## V. CONCLUSION

For the reasons stated herein, Plaintiff's action is dismissed.[1]

**IT IS, THEREFORE, ORDERED** that:

(1) Defendants' Motions to Dismiss, (Doc. Nos. 9, 10), are **GRANTED**, and this matter is dismissed with prejudice.

---

[1] Defendants also contend that dismissal is appropriate because the Kindercare Defendants were not properly served and because Plaintiff's Complaint, which alleges vague claims of human rights violations, does not state a cognizable claim. Because the Court finds that dismissal is appropriate for the other reasons stated in this decision, the Court does not address Defendants' alternative grounds for dismissal.

(4) The Clerk is directed to terminate this action.

Signed: November 21, 2020

Max O. Cogburn Jr
United States District Judge